IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| VINCENT D. GATLIN, SR., ) | CASE NO. 5:13CV02434 |
| ) | |
| Petitioner, ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | KATHLEEN B. BURKE |
| KIMBERLY CLIPPER, Warden. ) | |
| ) | |
| ) | **REPORT & RECOMMENDATION** |
| Respondent. ) | |

Petitioner Vincent D. Gatlin, Sr. ("Petitioner" or "Gatlin") brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent Lorain Correctional Institution Warden Kimberly Clipper ("Respondent") maintains custody of Petitioner pursuant to a September 20, 2011, judgment entry of conviction and sentence in *State v. Vincent Deon Gatlin, Sr.*, Case No. 2011CR0824 (Stark County). Doc. 8-1, pp. 4-8.[1] In that case, a jury found Petitioner guilty of felonious assault and sexual battery. Id. at p. 4. On September 9, 2011, the trial court merged Petitioner's felonious assault and sexual battery convictions for sentencing purposes and sentenced him to 8 years in prison for the felonious assault conviction and 5 consecutive years in prison for the repeat violent offender specification. Id. at p. 6.

On August 31, 2013, Gatlin filed his petition for writ of habeas corpus setting forth a single ground for relief. Doc. 1, p. 3. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Petitioner has failed to exhaust his sole habeas ground. Thus, the undersigned recommends that Gatlin's petition for writ of habeas corpus (Doc. 1) be **DENIED**.

---
[1] Doc. page citations are to ECF Doc. page numbers.

1

I.  Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2878 (2009). The Stark County Court of Appeals, Fifth Appellate District of Ohio, set forth the facts underlying Gatlin's conviction as follows:[2]

> {¶ 5} Thirteen year-old M.J. and her brother live with their grandparents, Annie and Andrew Johnson. M.J. has lived with her grandparents for as long as she can remember. Her mother is Lashell Patton, who is married to Gatlin. M.J's little sister Davaya lives with M.J's mother and Gatlin. Johnson's grandparents allow M.J. and her brother to visit with their mother and Gatlin.
>
> {¶ 6} One such visit took place the weekend of April 16, 2011. Gatlin and Patton routinely collected scrap metal from vacant houses to sell. Originally, on that evening Gatlin had planned to take M.J. and her brother with him to find scrap, but M.J's brother fell asleep. Around 11:00 p.m. that night, Gatlin told M.J. they needed to talk and that he was going to take her to her father's house.
>
> {¶ 7} The two left the house on foot, but instead of going to M.J's father's house they found a vacant home and walked through it. On the way out of the house, Gatlin stepped in a hole and twisted his ankle. They went back home, where Gatlin got a crutch and put a brace on his ankle. He and M.J. then went out again. This time Gatlin started walking towards M.J's father's house. As they walked, Gatlin started asking M.J. inappropriate questions such as what sexual positions she preferred. He then asked M.J. if it would "be nasty if I did it with you." M.J. agreed that would be "nasty" since Gatlin is her stepfather. During this conversation, Gatlin changed course, no longer headed toward M.J.'s father's home.
>
> {¶ 8} Instead, Gatlin lead [sic] M.J. to a vacant home located near the Timken Company. Gatlin gained access to the house, and then asked M.J. if she was ready to take a test. M.J. became nervous, said no and made an excuse to go back home. Gatlin told her to calm down, then forced her into the living room and pushed her down onto the couch.
>
> {¶ 9} M.J. was wearing her mother's sweat pants, which were big and baggy on her. Gatlin pulled them off M.J. He then removed her underwear. Gatlin was wearing pajama

---

[2] The facts are taken from the Fifth District Court of Appeals' decision *State v. Gatlin*, 2012-Ohio-3326, 2012 WL 2903963 (Ohio Ct. App. July 16, 2012). Gatlin has not demonstrated by clear and convincing evidence that the state court's factual findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

2

pants with a hole torn between the legs. It was not necessary for him to remove the pants before holding M.J. down with his body weight and engaging in vaginal intercourse. During the assault, Gatlin called M.J. by her nickname "Sticks," telling her "Sticks, you do this well."

{¶ 10} When he was finished, Gatlin stood up. M.J. saw "white stuff" come out of his penis. Gatlin advised M.J. "don't tell nobody that nothing happened between us, nothing at all." He then demanded, "swear on your little sister Davaya that you won't tell."

{¶ 11} The two then left the house and walked back to M.J.'s mother's house. When they arrived home, M.J.'s mother asked M .J. what was wrong. M.J. denied anything was wrong. She did not tell her mother the next day what had occurred in the vacant house. When her grandmother picked her up that evening, she still did not disclose what had happened to her.

{¶ 12} On April 19, 2011, M.J. told two of her cousins what Gatlin had done to her. They advised M.J. that if she did not tell her grandmother about the incident, they would. When she got home from school that afternoon, M.J. told her grandmother. M.J's grandmother responded by calling the Canton Police Department, and then taking M.J. to Akron Children's Hospital.

{¶ 13} At the hospital, nurse practitioner Donna Abbott examined M.J. Abbott works in the CARE Center, a clinic dedicated to the evaluation of children who present with suspicions or allegations of physical or sexual abuse or neglect. In her 19 years at Children's Hospital, she has examined over 6000 children.

{¶ 14} M.J.'s exam was normal. At trial, Abbott explained that physical findings in instances of sexual abuse are rare. Abbott completed a rape kit during M.J.'s exam, which was sent to the Canton–Stark County Crime Lab for analysis.

{¶ 15} Meanwhile, Canton Police Detective Charles Lancaster was assigned to investigate this matter. By the time he became involved, M.J. had already been to the hospital. He learned where the assault took place and went there to further investigate.

{¶ 16} The house was filthy. The couch cushions were without covers and clean. Given the condition of the rest of the house, it appeared that the covers had recently been removed from the cushions. Photographs were taken of the scene and a pair of latex gloves was collected from the floor.

{¶ 17} On April 25, 2011, Lancaster interviewed Gatlin. Gatlin showed up to the interview wearing a leg brace and said he injured himself playing basketball. Gatlin denied having sex with M.J. and told Lancaster, he and M.J. had a very good relationship. Gatlin consented to an oral swab. Lancaster collected the same and sent it to the Canton–Stark County Crime Lab.

{¶ 18} Criminalist and Canton–Stark County Crime Lab employee Kylie Graham performed the testing on M.J.'s rape kit, Gatlin's swab, and the latex gloves found at the

scene. The gloves yielded no useful forensic evidence. Graham did identify spermatozoa on M.J.'s vaginal swab. From the spermatozoa, she developed a DNA profile. She did the same with Gatlin's oral swab, and then compared the two profiles. Graham concluded that Gatlin was the source of the spermatozoa on M.J.'s vaginal swab.

{¶ 19} During Graham's testimony, Gatlin objected to Graham's testimony as an expert pursuant to Crim.R. 16(K). While Gatlin did not object to Graham being declared an expert, he argued that since the state failed to provide her qualifications at least 21 days before trial, her testimony should be precluded. The court took a recess so Gatlin could review Graham's qualifications and overruled the objection.

{¶ 20} Lancaster again interviewed Gatlin about M.J.'s allegation. Gatlin continued to deny the allegation and told Lancaster that M.J. was a "conniving teenager." He further advised Lancaster that he would never have sex with M.J. because he is HIV positive. Gatlin has been under the care of infectious disease physician Marcantonio Fiorentino for management of his HIV since 2003. Upon cross-examination, Lancaster testified that he did not attempt to retrieve the underwear M.J. was wearing the night in question and there was no physical evidence that placed Gatlin in the house where the crime occurred. Additionally, Lancaster testified there was no physical evidence that placed M.J. in the home. Crime Scene Unit officer, Jeffery Weller, testified that he examined the house for bodily fluids and he did not find evidence of any bodily fluids.

{¶ 21} At trial, Lashell Patton, Gatlin's wife and mother of M.J. testified that she did not observe anything out of the ordinary when Gatlin and M.J. returned from scrapping the evening in question. Gatlin took the stand in his own defense. He told the jury he had no idea how his semen got into M.J.'s vagina.

*State v. Gatlin*, 2012-Ohio-3226 *2-3, *appeal not allowed,* 2012-Ohio-5459, 133 Ohio St. 3d 1490, 978 N.E.2d 910 (Ohio Ct. App. July 16, 2012).

## II. Procedural Background

### A. State Conviction

On July 11, 2011, the Stark County Grand Jury returned an indictment charging Petitioner with one count of felonious assault based on sexual conduct while carrying HIV pursuant to R.C. 2903.11(B)(3) and one count of sexual battery pursuant to R.C. 2907.03(A)(5). *State v. Gatlin*, 2012-Ohio-3226 ¶2 *appeal not allowed,* 2012-Ohio-5459, 133 Ohio St. 3d 1490, 978 N.E.2d 910. On August 25, 2011, a superseding indictment was filed which added a repeat

4

violent offender ("RVO") specification, pursuant to R.C. 2941.149, to the charge of felonious assault. *Id.* "With respect to the repeat violent offender (RVO) specification, Gatlin understood that the specification would be tried to the court in a separate bifurcated hearing, and stipulated to authenticity and validity of his prior conviction." *Id.* at ¶3.

After hearing all the evidence and deliberating, the jury found Gatlin guilty as charged. *Id.* at ¶22. The court then addressed the RVO specification. *Id.* The state presented a certified copy of Gatlin's 1994 conviction for robbery, a felony of the second degree. *Id.* Based on Gatlin's stipulation and the state's exhibits, the court found Gatlin guilty of the specification. *Id.* On September 9, 2011, the trial court found that, pursuant to *State v. Johnson,* 128 Ohio St.3d 153, 2010–Ohio6314, 942 N.E.2d 1061, sexual battery and felonious assault were allied offenses. *Id.* at ¶23. Gatlin was then sentenced to eight years for felonious assault and a consecutive five years for the RVO specification. *Id.*

### B. Direct Appeal

On October 19, 2011, Petitioner timely filed a Notice of Appeal to the Fifth District Court of Appeals. Doc. 8-1, p. 37. In his Brief, he presented three assignments of error:

1. Appellant's convictions were against the manifest weight and sufficiency of the evidence.

2. Appellant was denied his right to a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when the trial court abused its discretion by allowing expert witnesses testimony.

3. The trial court erred when it sentenced Appellant on the repeat violent offender specification.

Doc. 8-1, p. 41. The State filed a responsive brief. Doc. 8-1, pp. 94-119. On July 16, 2012, the state appellate court affirmed Gatlin's conviction and sentence. *State v. Gatlin,* 2012-Ohio-3226 *appeal not allowed,* 2012-Ohio-5459, 133 Ohio St. 3d 1490, 978 N.E.2d 910.

5

### C. Ohio Supreme Court Appeal

On August 24, 2012, Gatlin timely filed a Notice of Appeal to the Ohio Supreme Court. Doc 8-1, p. 120-122. Gatlin raised a single proposition of law:

1. A criminal defendant may not be convicted of a repeat violent offender specification that requires that the defendant caused or attempted to cause serious physical harm, when the underlying offense does not contain such an element, and the jury makes no express finding regarding serious physical harm. Sixth and Fourteenth Amendments to the United States Constitution; Sections 5 and 10, Article I of the Ohio Constitution.

Doc. 8-1, p. 124, 152. The State filed a memorandum in response. Id. at 155-164. On November 28, 2012, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Id. at 165.

### D. Federal Habeas Petition

On October 28, 2013, Petitioner *pro se* signed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. Doc. 1. In his petition, Petitioner presents one ground for relief:

**Ground One:** A criminal defendant may not be convicted of a repeat violent offender specification that requires that the defendant caused or attempted to cause serious physical harm, when the underlying offense does not contain such an element, and the jury makes no express finding regarding serious physical harm. Sixth and Fourteenth Amendments to the United States Constitution; Section 5 and 10, Article 1 of the Ohio Constitution.

Doc. 1, p. 3. On January 13, 2014, Respondent filed the Return of Writ. Doc. 8. Respondent argues that Petitioner's sole ground is procedurally defaulted, not cognizable, and lacks merit. Doc. 8, p. 17. On May 12, 2014, Petitioner filed a Traverse (Doc. 17) to the return of writ, and on May 20, 2014, the Respondent filed a Reply to Petitioner's traverse (Doc. 18).

6

### III. Law

A. **Standard of Review under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to Gatlin's habeas petition because he filed it after the effective date of the AEDPA. 28 U.S.C. § 2254. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). Under the AEDPA, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies where state remedies are "still available at the time of the federal petition." *Id. at 806* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams, 460 F.3d at 806*.

**Exhaustion.**  A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6  (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). A constitutional claim for

relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 19*90). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 20*00). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 19*87); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1*987).

**Procedural Default.** Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*. In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 19*86), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin,* 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

### IV. Claim Analysis

In Gatlin's sole ground for relief, he argues that the state court violated his Sixth and Fourteenth Amendment rights under the U.S. Constitution by convicting him of a repeat violent offender specification which requires that the defendant caused or attempted to cause serious physical harm, although the jury made no express finding regarding serious physical harm. Doc. 1, p. 3. Respondent argues that Gatlin's sole ground is procedurally defaulted, is not cognizable under federal habeas review, and lacks merit. Doc. 8, p. 17. For the reasons that follow, Gatlin should be denied federal habeas relief on his sole ground because it is procedurally defaulted.

Gatlin challenged his RVO specification on direct appeal to the Fifth District but did not fairly present his claim as an alleged violation of a federal constitutional right. As set forth above, the federal courts do not have jurisdiction to consider a claim in a habeas petition that was

not "fairly presented" as a federal constitutional claim to the state courts. *Franklin v. Rose,* 811 F.2d 322, 324–25 (6th Cir.1987). A claim may only be considered "fairly presented" if the petitioner asserted both the factual and legal basis for his federal constitutional claim to the state courts. *Id.* at 325. The Sixth Circuit has noted four actions a defendant can take which are significant to the determination whether a claim has been "fairly presented": (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *See Id.* at 326. General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *Petrucelli v. Coombe,* 735 F.2d 684, 688–89 (2d Cir.1984).

The trial court sentenced Gatlin to 8 years on the felonious assault charge and 5 years for the RVO specification. Penalty enhancement is allowed once the trial court determines an offender is a repeat violent offender. *State v. Gatlin*, 2012-Ohio-3226 *8. Pursuant to R.C. 2929.14(B)(2)(a), in addition to the longest prison term authorized for the offense, the sentencing court may impose an additional prison term of 1 to 10 years if, among other criteria, the following is met:

> (ii) The offense of which the offender currently is convicted or to which the offender currently pleads guilty is * * * any felony of the second degree that is an offense of violence *and the trier of fact finds that the offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person.*

Id. (emphasis added).

On appeal to the Fifth District, Gatlin did not frame his RVO ground as a federal constitutional issue. Rather, Gatlin raised his RVO challenge only in relation to state law, citing

10

R.C. 2929.14(B)(2)(a) and *State v. Davis,*[3] 2009-Ohio-5079 (Ohio App. 7 Dist. September 25, 2009).  Specifically, Gatlin argued to the state court of appeals as follow:  "Appellant urges this Court to follow the 7th District in *Davis* and vacate the five years for the repeat violent offender specification because the trier of fact in the instant case, the jury, did not convict him of a crime that contained any elements concerning an attempt to cause or threat to cause serious physical harm to a person or resulted in serious physical harm to a person." Doc. 8-1, p. 54.

With regard to his RVO challenge, the Fifth District overruled his assignment of error stating as follows:

> [I]in the case at bar, Gatlin was convicted for having sexual relations with his minor stepdaughter knowing that he was HIV-positive. This new manner of committing felonious assault was added in 2000. *State v. Gonzalez,* 154 Ohio App.3d 9, 2003–Ohio–4421, 796 N.E.2d 12, ¶ 1 (1st Dist.) Gatlin's crime is inherently one of the worst forms of felonious assault because "unlike many other serious injuries, at this point in time, there is no cure for HIV or AIDS. While many victims of felonious assault may fully recover from the injuries of a beating, a stabbing, or a shooting, the victim here most probably will not." *Id.* at ¶ 131. "No doubt exists that HIV can ultimately cause the death of a person who becomes infected...." *State v. Couturier,* 10th Dist. No. 99AP–950, 2000 WL 796703 (June 22, 2000).
>
> In the case at bar, the jury found Gatlin engaged in sexual conduct with his thirteen-year-old step daughter while knowing that he was HIV positive, thereby finding at a minimum he attempted to cause serious physical harm.
>
> Thus, by its finding of guilty the trier of fact necessarily found that the "offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person."

*State v. Gatlin,* 2012-Ohio-3226 ¶¶ 56-58.  The state appellate court's finding is based solely on an interpretation of state law and state cases.

Gatlin first asserted a federal constitutional claim in his Memorandum in Support of Jurisdiction submitted to the Ohio Supreme Court on August 2012.  Doc. 8-1, pp. 123-132.

---

[3] The appellant in *Davis* was indicted and tried on the offense of Robbery instead of Aggravated Robbery. *Davis,* 2009-Ohio-5079.  The Seventh District found, in that case, that the plain language of R.C. 2929.14(B)(2)(a) precluded the trial court from sentencing Davis to any additional time since the jury convicted him of a crime of physical harm, but not *serious* physical harm. *Id.*

Gatlin argued that a "criminal defendant may not be convicted of a [RVO] specification that requires that the defendant caused or attempted to cause serious physical harm, when the underlying offense does not contain such an element and the jury makes no express finding regarding serious physical harm." Id. at 127.  In support of his argument, Gatlin cited the Sixth and Fourteenth Amendments to the U.S. Constitution and relied upon several U.S. Supreme Court Cases:  *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); and *Ring v. Arizona,* 536 U.S. 584, 592–593, and n. 1, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).  In *Apprendi* the U.S. Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490.  Four years later, in *Blakely,* the Court clarified that the definition of " 'statutory maximum' for *Apprendi* purposes is not the high-end that a sentence may not exceed, but rather the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Lovins v. Parker*, 712 F.3d 283, 289 (6th Cir. 2013) (quoting *Blakely,* 542 U.S. at 303, 124 S.Ct. 2531).

The Ohio Supreme Court denied Gatlin's request for leave to appeal and the appeal was dismissed.  The Ohio Supreme Court will not consider a constitutional question which was not raised and argued in the lower courts. *Leroy v. Marshall,* 757 F .2d 94, 99 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985); *Mitts v. Bagley,* No. 1:03CV1131, 2005 WL 2416929, at *60 (N.D.Ohio Sept. 29,* 2005); *State v. Phillips,* 27 Ohio St.2d 294, 302, 272 N.E.2d 347, 352 (1971). *See also State v. Roberts,* 1 Ohio St.3d 36, 437 N.E.2d 598, 599 (1982) (syllabus); *State v. Perry,* 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 105-106 (1967) (syllabus) (under Ohio law, constitutional issues cannot be considered in post-conviction proceedings where they could have been litigated at trial or on direct appeal); *State v. Williams,* 157 Ohio App.3d 374, 378, 811 N.E.2d 561, 564 (Ohio

Ct.App.2004). Gatlin can no longer raise a *Blakely* claim, i.e., a claim based on *Blakely v. Washington, supra*, in state court as it would be barred on the basis of res judicata.[4] *Leroy,* 757 F.2d at 99; *Mitts,* 2005 WL 2416929, at *60.

In *Miller v. Hudson*, 1:06CV544, 2007 WL 2407067 (N.D. Ohio Aug. 22, 2007), this Court found under similar circumstances that a *Blakely* claim was procedurally defaulted. *Id.* at *5. In that case, as in this matter, the petitioner, Miller, failed to frame his appeal to the Ohio court of appeals as a federal constitutional issue and later raised a constitutional issue via a Sixth Amendment *Blakely* claim to the Ohio Supreme Court but was denied leave to appeal. *Id.* at *4. This Court found that Miller did not fairly present his federal claim to the state courts and was procedurally barred from doing so under Ohio's *res judicata* doctrine, thereby barring his habeas action for procedural default. *Id.* at *5. Similarly, Gatlin's *Blakely* claim was not fairly presented to the state courts and Gatlin is procedurally barred from seeking federal habeas relief on this claim.[5]

"A defendant can overcome a procedural default by showing (a) cause for the default and (b) actual prejudice from it."[6] *Hall v. Vasbinder,* 563 F.3d 222, 236 (6th Cir.2009). Gatlin argues that his claim was properly preserved and, therefore, does not argue cause or prejudice to

---

[4] The Sixth Circuit has concluded that the *Maupin* factors for procedural default are met in connection with Ohio's res judicata doctrine when a petitioner fails to assert a federal *Blakely* claim on direct appeal and the Ohio Supreme Court declines jurisdiction "as not involving a substantial constitutional question." *Abshear v. Moore*, 354 F. App'x 964, 966, 968 (6th Cir. 2009) ("With regard to the remainder of the *Maupin* factors, we have held repeatedly that Ohio's res judicata doctrine is an adequate and independent state ground. And the second requirement-that the state rule be enforced-is not applicable where, as here, the state had no opportunity to rely upon the res judicata doctrine. Under these circumstances, [petitioner's] claims are procedurally defaulted.") (internal citations and quotations are omitted).

[5] To the extent that Gatlin's habeas claim is dependent on state law, that claim is not cognizable in this federal habeas action. *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law.")

[6] The "fundamental miscarriage of justice" exception is not applicable here because Gatlin is not making a claim of "actual innocence." *Pudelski v. Wilson,* 576 F.3d 595, 606 n. 2 (6th Cir.2009).

13

excuse his procedural default.[7]  See Doc. 17.  Accordingly, Payton's sole ground for relief is procedurally defaulted.

## V. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Petitioner's habeas petition be **DENIED**.

Dated: June 23, 2014

Kathleen B. Burke
United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[7] "Habeas petitioners…must present affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren v. Mitchell*, 440 F.3d 754,764 (6th Cir. 2006).